Opinion
 

 TURNER, P. J.
 

 Defendant, Shonte Mosley, appeals his multiple convictions in which he was found to have been previously convicted of a serious felony conviction within the meaning of Penal Code
 
 [1]
 
 sections 667, subdivisions (b) through (i) and 1170.12. He contends he is entitled to resentencing so that the trial judge can exercise his discretion pursuant to section 1385, subdivision (a) to strike the prior serious felony conviction as mandated by
 
 People
 
 v.
 
 Superior Court
 
 (Romero) (1996) 13 Cal.4th 497, 530, footnote 13 [53 Cal.Rptr.2d 789, 917 P.2d 628]. The jury returned its
 
 *492
 
 verdicts on July 26,1996, 36 days after the filing of the
 
 Romero
 
 opinion. The sentencing in the present case occurred on August 12,1996, 53 days after the filing of the
 
 Romero
 
 decision. Therefore, we conclude based upon the analysis in the decision
 
 In re Cortez
 
 (1971) 6 Cal.3d 78, 83-85 [98 Cal.Rptr. 307, 490 P.2d 819] that footnote 13 of the
 
 Romero
 
 opinion is inapplicable to the present case.
 

 On June 20, 1996, the California Supreme Court issued its opinion in
 
 People
 
 v.
 
 Superior Court {Romero), supra,
 
 13 Cal.4th at pages 504-532 holding that a convicted felon subject to the enhanced recidivist sentencing provisions of sections 667, subdivisions (b) through (i) and 1170.12 was entitled to have the trial judge exercise discretion pursuant to section 1385, subdivision (a) and determine whether to strike a prior serious felony conviction in the interests of justice. The Supreme Court addressed the issue of the retroactivity of its decision in footnote 13 of its opinion and held: “Our holding, which relates only to sentencing, is fully retroactive. (See
 
 People
 
 v.
 
 Belmontes
 
 (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686];
 
 People
 
 v.
 
 Tenorio
 
 [(1970)] 3 Cal.3d [89,] 95, fn. 2 [89 Cal.Rptr. 249, 473 P.2d 993].) A defendant serving a sentence under the Three Strikes law (§ 667, subds. (b)-(i); § 1170.12) imposed by a court that misunderstood the scope of its discretion to strike prior felony conviction allegations in furtherance of justice pursuant to section 1385(a), [may raise the issue on appeal, or if relief on appeal is no longer available,] may file a petition for habeas corpus to secure reconsideration of the sentence. Such a petition should be filed in the sentencing court.
 
 (People
 
 v.
 
 Tenorio, supra,
 
 3 Cal.3d at p. 95, fn. 2.) Such a petition may be summarily denied if the record shows that the sentencing court was aware that it possessed the discretion to strike prior felony conviction allegations without the concurrence of the prosecuting attorney and did not strike the allegations, or if the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion to strike the allegations.
 
 (People
 
 v.
 
 Belmontes, supra,
 
 34 Cal.3d at p. 348, fn. 8.)”
 
 (People
 
 v.
 
 Superior Court (Romero), supra,
 
 13 Cal.4th at p. 530, fn. 13.) Filed on June 20, 1996, the
 
 Romero
 
 opinion became final when the rehearing petition was denied on August 21, 1996. (Cal. Rules of Court, rule 24(a).)
 

 Before proceeding to an analysis of the application of the
 
 Romero
 
 opinion to the present case, it is appropriate to review the genesis of the procedure set forth in footnote 13 of that decision which allows for postjudgment attacks on sentences where the record fails to reflect a trial court was aware of its authority to impose a particular disposition over the prosecutor’s objection. As will be noted, in footnote 13, the Supreme Court adopted its long-standing practice of allowing postjudgment attacks on sentences when
 
 *493
 
 it established a retroactive rule invalidating a statute which prohibited a trial judge from granting leniency to a criminal defendant without prosecutorial concurrence. In numerous other situations, the California Supreme Court has defined the retroactive application of its opinions invalidating mandatory sentence provisions in certain sentencing statutes and set forth a process to allow previously sentenced defendants to challenge their sentences or other dispositions in postjudgment motions or habeas corpus petitions. (E.g.
 
 People
 
 v.
 
 Craft
 
 (1986) 41 Cal.3d 554, 562 [224 Cal.Rptr. 626, 715 P.2d 585] [sex offender sentenced under section 667, subdivision (d) entitled to challenge trial judge’s unawareness of availability of more lenient section 667, subdivision (c) sentencing format by means of postjudgment habeas corpus petition];
 
 People
 
 v.
 
 Belmontes
 
 (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686] [habeas corpus procedure as described in the decision of
 
 In re Cortez, supra,
 
 6 Cal.3d 78 may be used to challenge sentences prior to issuance of
 
 Belmontes
 
 opinion where record was unclear as to whether trial judge was aware of section 664, subdivision (c) sentencing discretion in certain sex cases];
 
 In re Navarro
 
 (1972) 7 Cal.3d 248, 264 [102 Cal.Rptr. 137, 497 P.2d 481] [narcotics addicts who were denied a commitment to the California Rehabilitation Center by invalidated prosecutorial concurrence requirement could challenge sentences under specified circumstances];
 
 People
 
 v.
 
 Hannon
 
 (1971) 5 Cal.3d 330, 340, fn. 7 [96 Cal.Rptr. 35, 486 P.2d 1235] [minors tried as adults who were returned from youth authority could not be sentenced to prison and such sentences could be challenged by means of a postjudgment habeas corpus petition];
 
 People
 
 v.
 
 Tenorio
 
 (1970) 3 Cal.3d 89, 95, fn. 2 [89 Cal.Rptr. 249, 473 P.2d 993] [habeas corpus may be used to challenge a sentence if the trial judge was unaware of the power to strike a prior narcotics conviction].) Footnote 13 is consistent with the well-established California Supreme Court practice to provide an ordered process by which defendants may secure the benefit of its retroactive sentencing decisions.
 

 Tenorio,
 
 which is cited twice in footnote 13 of
 
 Romero,
 
 was the first time the Supreme Court overturned on separation of powers grounds a statute requiring prosecutorial concurrence before a prior conviction finding could be stricken. The opinion was filed on September 1, 1970.
 
 (People
 
 v.
 
 Tenorio
 
 (1970) 3 Cal.3d 89.) In
 
 Tenorio,
 
 the Supreme Court disapproved its prior decision in
 
 People
 
 v.
 
 Sidener
 
 (1962) 58 Cal.2d 645, 648-651 [25 Cal.Rptr. 697, 375 P.2d 641] which held that there was no violation of the separation of powers doctrine when former Health and Safety Code section 11718 precluded a trial judge from striking a prior narcotics conviction pursuant to section 1385 without prosecutorial concurrence. In footnote 2 of its opinion, the
 
 Tenorio
 
 court set forth the process by which defendants sentenced prior to that decision could challenge their sentences as follows:
 
 *494
 
 “Inasmuch as today’s decision relates only to sentencing and will not require any retrials, we have concluded that it should enjoy fully retroactive effect. (Cf.
 
 In re Dabney
 
 [(1969)] 71 Cal.2d 1, 9-10 [76 Cal.Rptr. 636, 452 P.2d 924].) Any prisoner suffering a sentence imposed after the effective date of Health and Safety Code section 11718 (Sept. 18, 1959) and augmented by virtue of a prior narcotics conviction may file a habeas corpus petition with the superior court inviting the exercise of discretion to dismiss the prior conviction. Petitions should be filed in the court with territorial jurisdiction in the first instance, and transferred by that court to the sentencing court in the event the court with territorial jurisdiction was not the sentencing court.
 
 (In re Caffey
 
 [(1968)] 68 Cal.2d 762, 765, fn. 3 [69 Cal.Rptr. 93, 441 P.2d 933].) Petitions should not be filed with this court or the Court of Appeal. Upon receipt of such a petition, the sentencing court should follow normal sentencing procedures and grant appropriate relief whenever deemed warranted in its discretion.”
 
 (People
 
 v.
 
 Tenorio, supra,
 
 3 Cal.3d at pp. 95-96, fn. 2.) It bears considerable emphasis that footnote 13 of
 
 Romero
 
 twice cites to
 
 Tenorio.
 

 In 1971, the Supreme Court detailed the procedures that were to be followed in reviewing challenges under footnote 2 of the
 
 Tenorio
 
 opinion to the sentences where the trial judge had operated under the misapprehension she or he could not strike a prior narcotics conviction because of the provisions of former Health and Safety Code section 11718 in the decision of
 
 In re Cortez, supra,
 
 6 Cal.3d at pages 82-83 and 88-89. In
 
 Cortez,
 
 the Supreme Court held; “We are now called upon to further detail these implementing procedures and specifically to determine whether a prisoner seeking relief under
 
 Tenorio
 
 is entitled to a hearing at which he is present and represented by counsel. We have concluded that a petitioning prisoner who has established that he was sentenced pursuant to a narcotics conviction sustained between September 18, 1959 and September 1, 1970, and that his sentence was increased due to a prior narcotics conviction, must be accorded a hearing before the sentencing court at which he is personally present and represented by counsel.”
 
 (Id.
 
 at pp. 82-83, fns. omitted.) As noted previously, September 1, 1970, was the date the
 
 Tenorio
 
 opinion was filed.
 
 (People
 
 v.
 
 Tenorio, supra,
 
 3 Cal.3d 89.) Footnote 2 of the
 
 Cortez
 
 opinion, which was omitted from the immediately preceding quotation, referred again to the date of the
 
 Tenorio
 
 opinion as the operative date upon which procedures for postjudgment challenges to sentences could be implemented as follows: “The period of time from September 18, 1959, the effective date of section 11718, to September 1, 1970, the date of our decision in
 
 People
 
 v.
 
 Tenorio, supra,
 
 declaring said section unconstitutional, represents the interval during which section 11718 unconstitutionally restricted a trial judge’s discretion to strike prior convictions.”
 
 (People
 
 v.
 
 Cortez, supra,
 
 6 Cal.3d at
 
 *495
 
 p. 82, fn. 2.) Later in the
 
 Cortez
 
 opinion, the Supreme Court set forth more precisely the parameters of postjudgment relief available because of the
 
 Tenorio
 
 decision in the following fashion: “For the guidance of court and counsel in this case and in similar cases we outline the procedure to be followed in the future where a petition seeking
 
 Tenorio
 
 relief is filed:
 
 First,
 
 every prisoner who has been convicted of a narcotics offense between September 18, 1959, and September 1, 1970, (see fh. 2,
 
 ante),
 
 whose sentence was increased because of one or more prior narcotics convictions (see fh. 3,
 
 ante)
 
 and who desires an opportunity to invoke the discretion of the court to dismiss the prior convictions, may file a petition for writ of habeas corpus with the superior court of territorial jurisdiction.
 
 Second,
 
 that court should transfer the petition to the original sentencing court.
 
 Third,
 
 upon receiving the petition, the sentencing court should ascertain from its own records whether petitioner has established a prima facie case by showing that he was convicted of a narcotics offense between September 18, 1959, and September 1, 1970, and that his sentence was augmented by virtue of one or more prior narcotics convictions. If not, the petition should be summarily denied.”
 
 (Id.
 
 at pp. 88-89, fns. omitted.) The Supreme Court made it crystal clear: the postjudgment procedure referred to in
 
 Tenorio
 
 applied only to defendants convicted and sentenced through the September 1, 1970, filing date of the decision. If the record indicated that the defendant was sentenced after September 1, 1970, the Supreme Court directed that the postjudgment petition be summarily denied.
 
 (Id.
 
 at p. 89.)
 

 On the same day as the
 
 Cortez
 
 decision, the California Supreme Court issued its opinion in the case of
 
 In re Banks
 
 (1971) 6 Cal.3d 91, 92 [98 Cal.Rptr. 314, 490 P.2d 826]. In
 
 Banks,
 
 the defendant was sentenced prior to the September 1, 1970, filing date of
 
 Tenorio.
 
 The
 
 Banks
 
 court held: “Since the record clearly indicates that petitioner was convicted and sentenced for a narcotics felony conviction between September 19, 1959, and September 1, 1970, and that said sentence was augmented due to a prior narcotics felony conviction, by virtue of our holding today in
 
 In re Cortez,
 
 petitioner is entitled to a hearing before the sentencing court at which he shall be present and represented by counsel and the sentencing court shall determine in its discretion whether or not, for purposes of sentencing, to strike the 1955 prior conviction.”
 
 (Id.
 
 at pp. 92-93.) Later, both the Supreme Court and the Court of Appeal indicated that the postjudgment procedure set forth in
 
 Tenorio
 
 was only to apply to cases where the defendant was sentenced through the date of the September 1, 1970, filing of that opinion.
 
 (People
 
 v.
 
 Navarro, supra,
 
 7 Cal.3d at p. 256;
 
 In re Gomez
 
 (1973) 31 Cal.App.3d 728, 733 [107 Cal.Rptr. 609].)
 

 We now apply
 
 Romero
 
 and the body of law of which it is a part to the present case. The jury returned its verdicts on July 26, 1996. Defendant
 
 *496
 
 was sentenced on August 12, 1996, 53 days after the
 
 Romero
 
 decision was filed.
 
 (People
 
 v.
 
 Superior Court (Romero), supra,
 
 13 Cal.4th at p. 497.) In the present case, the transcript of the proceedings when judgment was imposed on August 12, 1996, does not indicate in the words of footnote 13 of
 
 Romero,
 
 the “sentencing court was aware that it possessed the discretion to strike prior felony conviction allegations without the concurrence of the prosecuting attorney and did not strike the allegations or if the record shows that the sentencing court clearly indicated that it would not, in any event, have exercised its discretion to strike the allegations.”
 
 (Id.
 
 at p. 530, fn. 13.) Hence, defendant argues that since the sentencing record reflects neither an awareness by the trial court of the right to strike the prior serious felony conviction pursuant to section 1385, subdivision (a) nor a stated indication of an unwillingness to do so, he is entitled to resentencing under the authority of footnote 13 of
 
 Romero. (People
 
 v.
 
 Howard
 
 (1996) 47 Cal.App.4th 1526, 1540 [55 Cal.Rptr.2d 520];
 
 People
 
 v.
 
 Sotomayor
 
 (1996) 47 Cal.App.4th 382, 390-391 [54 Cal.Rptr.2d 871];
 
 People
 
 v.
 
 Metcalf
 
 (1996) 47 Cal.App.4th 248, 252 [55 Cal.Rptr.2d 164].) The Attorney General argues that since the sentencing occurred 53 days after the filing of the
 
 Romero
 
 opinion, it is presumed that the trial court was aware of its sentencing discretion. We agree and conclude footnote 13 is inapplicable to a sentencing occurring 53 days after the filing of the
 
 Romero
 
 opinion where the verdicts were also returned after the issuance of that decision.
 

 The general rule is that a trial court is presumed to have been aware of and followed the applicable law.
 
 (Howard
 
 v.
 
 Thrifty Drug & Discount Stores
 
 (1995) 10 Cal.4th 424, 443 [41 Cal.Rptr.2d 362, 895 P.2d 469] [“[A]n appellate court must presume that the decision of the trial court is correct.”];
 
 Corenevsky
 
 v.
 
 Superior Court
 
 (1984) 36 Cal.3d 307, 321 [204 Cal.Rptr. 165, 682 P.2d 360] [“An order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown.”];
 
 In re Marriage of Flaherty
 
 (1982) 31 Cal.3d 637, 645 [183 Cal.Rptr. 508, 646 P.2d 179] [“Neither party requested findings of fact from the trial court. In the absence of such findings, an appellate court must presume that the facts would support the trial court’s judgment.”];
 
 Denham
 
 v.
 
 Superior Court
 
 (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] [“ ‘A judgment or order of the lower court is
 
 presumed correct.
 
 All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.’ ” (Original italics.)]; Evid. Code, § 664.) These general rules concerning the presumption of regularity of judicial exercises of discretion apply to sentencing issues.
 
 (People
 
 v.
 
 Moran
 
 (1970) 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763] [decision to decline to commit adult to the youth authority];
 
 People
 
 v.
 
 Quiche
 
 (1964) 61 Cal.2d 155,159-160 [37 Cal.Rptr. 617, 390 P.2d 393] [decision to
 
 *497
 
 impose death penalty];
 
 People
 
 v.
 
 Hooton
 
 (1959) 53 Cal.2d 85, 88 [346 P.2d 199] [determination to impose life sentence].)
 

 Footnote 13 of
 
 Romero
 
 represented an exception to the normal presumption of regularity concerning the exercise of sentencing discretion. This was a result of a practical determination by the California Supreme Court that given the uncertainty in the law on June 20, 1996, the normal presumption that a sentencing judge would be willing to consider striking a prior serious felony conviction as permitted by section 1385, subdivision (a) without prosecutorial concurrence did not exist. Prior to June 20, 1996, the date the
 
 Romero
 
 opinion was filed, most Courts of Appeal which had considered the issue concluded that there was no right on the part of sentencing judge to strike a prior felony conviction or under very limited circumstances such a decision could be made. Some Courts of Appeal held there was a limited right to strike pursuant to section 1385, subdivision (a). Only one Court of Appeal held the prosecutorial concurrence requirement violated the holding of
 
 Tenorio
 
 and its progeny.
 
 [2]
 
 The
 
 Romero
 
 decision was a widely awaited opinion and there was a debate within the legal community as to whether trial judges could strike prior serious felony convictions and, if so, to what extent. The normal presumption that a trial judge correctly applied existing law did not apply in the
 
 pre-Romero
 
 setting. In fact, much of the time between the adoption of section 667, subdivisions (b) through (i) and the filing of the
 
 Romero
 
 opinion, the existing Court of Appeal authority prohibited under all circumstances a trial judge to exercise discretion pursuant to section 1385, subdivision (a) and strike the prior serious felony conviction.
 

 Hence, footnote 13 was addressed to the commonsense reality that for much of the time after the adoption of section 667, subdivisions (b) through
 
 *498
 
 (i) by the Legislature and section 1170.12 by the voters, the controlling authority was that there was no or only a limited power to strike prior serious felony convictions. There is nothing in the language of footnote 13 which indicates it was intended to set forth a rule in perpetuity that a trial judge must either indicate she or he is aware of the right to strike a prior serious felony conviction or would be unwilling to do so. Moreover, such a rule would only increase the already heavy burdens of sentencing judges. Finally, footnote 13 by its very terms refers to the issue of its retroactive application.
 
 [3]
 

 We disagree with defendant’s contention that since the
 
 Romero
 
 opinion was not final on the date of sentencing in this case, August 12,1996, he is entitled to resentencing pursuant to footnote 13. However, the issue is one of whether the normal presumption that the trial judge exercised discretion correctly applies to this case where the sentencing occurred 53 days after the widely awaited filing of the
 
 Romero
 
 decision. No decisional authority applying the
 
 Tenorio
 
 rule has held that the normal presumption of correctness does not apply to a decision after the filing date of a Supreme Court opinion invalidating a prosecutorial concurrence provision in asentencing statute. In fact, the Supreme Court has limited the effect of footnote 2 of the
 
 Tenorio
 
 opinion on three occasions to cases where the sentencing occurred prior to or on the date of filing of that decision.
 
 (People
 
 v.
 
 Navarro, supra,
 
 7 Cal.3d at p. 256;
 
 In re Banks, supra,
 
 6 Cal.3d at p. 92;
 
 In re Cortez, supra,
 
 6 Cal.3d at pp. 88-89.) There is no appellate court authority at all that supports defendant’s theory that the
 
 Tenorio
 
 process, which has been repeated in varying contexts on a number of occasions, is delayed to the date of finality of an opinion that strikes down a prosecutorial concurrence requirement in the sentencing context. This is particularly true in a case such as
 
 Romero
 
 which was a widely awaited decision.
 

 We wish to draw an important distinction though in terms of the right to challenge a judgment in the case of a post
 
 -Romero
 
 sentence. In the event a sentencing judge was unaware of the discretion to dismiss a prior serious felony finding or allegation, that sentence must be set aside under footnote 13 of
 
 Romero.
 
 For example, if after the
 
 Romero
 
 decision was filed, a judge states at the time of sentencing that he or she believes prosecutorial concurrence is a necessary element of a determination to strike a prior conviction pursuant to section 1385, subdivision (a), then such a sentence would be subject to being set aside under footnote 13. Another example of where
 
 *499
 
 footnote 13 would be applicable to a sentencing hearing occurring after June 24, 1996, is where the trial judge refuses to strike the prior serious felony conviction because the
 
 Romero
 
 decision is not yet final. In those cases, footnote 13 would be applicable. However, in a case such as this where the conviction and sentencing occurred 53 days after the
 
 Romero
 
 opinion was filed and there is a complete absence of any evidence the trial judge was unaware of the scope of his discretion, remand for resentencing is not mandated by footnote 13.
 

 To sum up, 53 days after the
 
 Romero
 
 decision was filed the normal presumption concerning regularity of sentencing decisions would be applicable to circumstances such as those in the present case where the verdicts were returned and sentence imposed after that opinion was issued. The powers of a sentencing judge are now clear. The right of a judge to strike a prior serious felony conviction without securing prosecutorial agreement was articulated with unmistakable clarity in
 
 Romero.
 
 The present case involved an attempt to kill with a knife an unarmed victim of carjacking (§§ 187, 215, 664,12022, subd. (b)) by a remorseless gang member who was on parole for robbery. It can be presumed that the experienced trial judge was aware of his power to strike the prior serious felony conviction and intelligently chose not to do so.
 

 The judgment is affirmed.
 

 Grignon, J., and Godoy Perez, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied May 21, 1997.
 

 [1]
 

 All future statutory references are to the Penal Code.
 

 [2]
 

 The following
 
 pre-Romero
 
 cases remain pending before the California Supreme Court after a grant of review:
 
 People
 
 v.
 
 Mills
 
 (1996) 48 Cal.App.4th 143 [51 Cal.Rptr.2d 168], review granted June 12, 1996 (S053149);
 
 People
 
 v.
 
 Peterson
 
 (1995) 49 Cal.App.4th 1810 [48 Cal.Rptr.2d 318], review granted Mar. 21, 1996 (S051311);
 
 People
 
 v.
 
 Casillas
 
 (1995) 49 Cal.App.4th 1837 [47 Cal.Rptr.2d 734], review granted Mar. 14, 1996 (S051201);
 
 People
 
 v.
 
 Drew
 
 (1995) 49 Cal.App.4th 180 [47 Cal.Rptr.2d 319], review granted Mar. 14, 1996 (S050984);
 
 People
 
 v.
 
 Superior Court
 
 (Missamore) (1995) 47 Cal.App.4th 1292 [45 Cal.Rptr.2d 392], review granted Dec. 21, 1995 (S044037);
 
 People
 
 v.
 
 Campos
 
 (1995) 47 Cal.App.4th 1366 [45 Cal.Rptr.2d 706], review granted Dec. 21, 1995 (S049828);
 
 People
 
 v.
 
 Superior Court (Pipkin)
 
 (1995) 47 Cal.App.4th 1833 [46 Cal.Rptr.2d 474], review granted Nov. 22, 1995 (S049470);
 
 People
 
 v.
 
 Gore
 
 (1995) 46 Cal.App.4th 1396 [44 Cal.Rptr.2d 244], review granted Nov. 22,1995 (S048866);
 
 People
 
 v.
 
 Williams
 
 (1995) 46 Cal.App.4th 1522 [44 Cal.Rptr.2d 743], review-granted Nov. 16, 1995 (S049295);
 
 People
 
 v.
 
 Bailey
 
 (1995) 46 Cal.App.4th 743 [44 Cal.Rptr.2d 205], review granted Nov. 16, 1995 (S048808);
 
 People
 
 v.
 
 Loomis
 
 (1995) 47 Cal.App.4th 46 [44 Cal.Rptr.2d 775], review granted Nov. 16,1995 (S049374);
 
 People
 
 v.
 
 Petty
 
 (1995) 51 Cal.App.4th 203 [44 Cal.Rptr.2d 34], review granted Nov. 2, 1995 (S048702); and
 
 People
 
 v.
 
 Glaster
 
 (1995) 49 Cal.App.4th 1910 [45 Cal.Rptr.2d 65], review granted Oct. 19, 1995 (S048283).
 

 [3]
 

 Because the issue has not been raised, we do not address the question of whether when the accused is subject to doubling of the determinate term pursuant to sections 667, subdivision (e)(1) and 1170.12, subdivision (c)(1) such is a sentence choice within the meaning of section 1170.12, subdivision (c) and rule 405(f) of the California Rules of Court.