Filed 2/9/24  P. v. Pennington CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>MICHAEL PENNINGTON,<br><br>　　　Defendant and Appellant. | D081312<br><br><br>(Super. Ct. No.  SCN422370) |

APPEAL from a judgment of the Superior Court of San Diego County, Brad A. Weinreb, Judge.  Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers, and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Michael Pennington of assault by a means likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4); count 2).[2] The court sentenced Pennington to prison for the middle term of three years. The court also imposed a restitution fine of $900 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), and a criminal conviction assessment of $30 (Gov. Code, § 70373).

Pennington appeals, contending the trial court: (1) abused its discretion in sentencing him to the middle term without properly considering certain mitigating factors and (2) improperly imposed fines without holding an ability to pay hearing. We are not persuaded by Pennington's arguments; thus, we affirm the judgment.

FACTUAL BACKGROUND

The underlying facts of Pennington's crime are not germane to the resolution of the issues before us. Suffice it to say, Pennington attacked a father who was riding his bike with his 11-year-old daughter. Pennington sprayed the victim with bear spray, bit him, gouged his eyes and ears, and kicked him.

DISCUSSION

I

PENNINGTON'S PRISON SENTENCE

A. Pennington's Contentions

Pennington argues the trial court abused its discretion in sentencing him to the middle term because the court did not apply section 1170,

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] The jury acquitted Pennington of assault with a deadly weapon (§ 245, subd. (a)(1); count 1).

subdivision (b)(6).  Specifically, he contends the trial court did not consider his childhood trauma and abuse when imposing his sentence.  We disagree.

B.  Background

Before the sentencing hearing, Pennington filed a statement in mitigation highlighting his mental health issues, along with a psychological evaluation and several support letters.  He asked the trial court to impose formal probation and credit for time served.  The psychological evaluation discussed Pennington's self-report that his father was a drug dealer, that Pennington "tripped out at 5 years old on LSD," and that his stepfather sexually abused him once when was he was 14 years old.

The prosecution filed a sentencing brief asking the court to impose the middle term of three years in prison because of Pennington's numerous prior convictions of increasing seriousness, the young victim's vulnerability, Pennington's prior poor performance on probation, and that Pennington committed another similar crime during the pendency of the case.  The probation department also recommended a three-year term, noting Pennington's numerous misdemeanor convictions spanning 25 years and his prior poor performance on probation.

At the sentencing hearing, the court noted that it had reviewed the prosecution's sentencing brief, Pennington's statement in mitigation and accompanying documents, and the probation report.  The court indicated that it was inclined to follow the probation report's recommendation but allowed the parties to address the court.

Pennington's counsel raised Pennington's mental health issues and requested probation with time served based on those issues, as well as Pennington's lack of a prior felony conviction, lack of serious or violent

criminal conduct, lack of sophistication in the crime, and letters of support. Pennington also made a statement on his own behalf.

In response, the prosecution disputed defense counsel's statement that Pennington did not have a history of violence, noting five prior batteries on Pennington's record and multiple incidents where he had used bear spray on other individuals. The prosecutor also referred to Pennington's record of 14 failed probation attempts, taking issue with defense counsel's argument that Pennington would comply with all probation terms should probation be granted. Finally, the prosecutor noted Pennington's failure to accept responsibility for his crime, and the impact the crime had on the 11-year-old victim.

The trial court determined that probation was unwarranted given Pennington's role as a primary aggressor in the instant matter and multiple similar attacks, his failure to understand his role as aggressor and not community helper, his complete failure to comply with the terms of prior probations, his long criminal history dating back 25 years, and probation's determination that he posed a high risk to reoffend. The trial court then weighed the circumstances in mitigation and aggravation and determined that the middle term was the appropriate sentence for Pennington's case. To this end, the court explained "there are no circumstances of mitigation that I find conforming before me that are particularly applicable to this case" and "there aren't any mitigant [*sic*] factors that I find compelling that would suggest to the court that a low term would be warranted."

The court cited several aggravating factors, including (1) numerous prior convictions that are of increasing seriousness, (2) unsatisfactory past performance on probation, (3) one of the victims was a vulnerable 11-year-old

4

minor, and, (4) present risk of danger to the community. The court then denied probation and imposed a three-year prison sentence.

C. Legal Principles

Assembly Bill No. 124 amended the Determinate Sentencing Law (§ 1170, subd. (b)) to make lower term sentencing presumptive under certain circumstances. (Stats. 2021, ch. 695, § 5.3.) As relevant here, lower term sentencing is presumptively appropriate where a defendant "has experienced psychological, physical, or childhood trauma" and that trauma "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(A); see Cal. Rules of Court, rule 4.420(e)(1).) Where the presumption applies, the court must apply the lower term unless it "finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

There is no dispute that section 1170, subdivision (b)(6) was in effect at the time Pennington was sentenced.

Generally, we review a trial court's sentencing decisions for abuse of discretion, evaluating whether the court exercised its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

D. Analysis

Pennington contends the trial court failed to exercise "informed discretion" because it did not understand the scope of its discretion outlined in section 1170, subdivision (b)(6). Thus, he maintains that the court imposed the middle term sentence without taking his past abuse and mental

5

disorders into consideration as contributing factors for the lower term. We disagree.[3]

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) But remand for resentencing is not required "if the record demonstrates the trial court was aware of its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Remand also is "unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record." (*Id.* at p. 1229.)

Here, Pennington has the burden to affirmatively show the trial court misunderstood or abused its discretion. (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.) Otherwise, it is presumed the trial court fully understood its discretion and acted within the law. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496; *Gutierrez*, *supra*, 58 Cal.4th at p. 1390 ["Absent evidence to the contrary, we presume that the trial court knew and applied the governing law"].)

In sentencing a defendant under newly added section 1170, subdivision (b), the middle term is the presumptive sentence unless certain circumstances exist. When psychological, physical, or childhood trauma is a contributing factor to the offense, the sentencing court shall impose the lower term, "unless the court finds that the aggravating circumstances outweigh

---

[3] We summarily reject the People's argument that this issue was forfeited. The documents accompanying Pennington's statement in mitigation explicitly referenced Pennington's alleged childhood trauma and abuse. Thus, we conclude those possible mitigating factors were before the court for purposes of sentencing. Because we consider Pennington's claims of sentencing error on the merits, we need not address his assertion that his trial counsel was constitutionally ineffective.

the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)

At the time of Pennington's sentencing hearing in November 2022, the changes to section 1170 had been in effect for 11 months. The trial court is presumed to have known and followed amended section 1170. (See *People v. Thomas* (2011) 52 Cal.4th 336, 361.)

Although the court did not explicitly reference section 1170, subdivision (b)(6), we see nothing in the record suggesting the court misunderstood its discretion. The court read and considered the psychological evaluation submitted with Pennington's statement in mitigation, which outlined the facts relating to Pennington's mental health issues and alleged childhood abuse. The court also considered defense counsel's argument, which highlighted the psychological evaluation. Moreover, the trial court had previously granted Pennington's request for mental health diversion. As such, the record strongly suggests that the court was well aware of his mental health issues and relevant background.

Yet, even considering the evidence presented by defense counsel, the court found no mitigating factors existed to warrant a lower term sentence. To this end, the court explained:

> "If we look at the terms available, of course, we have a low term, a mid term, and upper term that is available. For those purposes, I look at what are the circumstances in mitigation and aggravation? And there are no circumstances of mitigation that I find conforming before me that are particularly applicable to this case. And so to suggest that, 'Well, then, you can't impose a mid term because that seems excessive in light of what occurred before,' all I have is a conviction based upon facts that I heard and was found by a jury. And either I grant probation or I grant a prison term. And I have sentencing

7

options, but there aren't any mitigant [*sic*] factors that I find compelling that would suggest to the court that a low term would be warranted."

We read the court's comments as an indication that it considered the evidence before it, including Pennington's claim of childhood abuse and trauma, and found that it was not a "contributing factor" in his offense. (See § 1170, subd. (b)(6).)

The court also discussed aggravating factors, including (1) Pennington's numerous convictions that are of increasing seriousness, (2) his unsatisfactory prior performance on probation, and (3) the fact that the victim's juvenile daughter also suffered injuries during the assault on her father. The court explained Pennington "has a chronic history of macing others. And while he claimed to be in fear each time, he was deemed the primary aggressor, for which was he [*sic*] deemed the primary aggressor in this case because the jury rejected the self-defense evidence as to that issue." The court specifically found that Pennington "continues to place others in the community in fear under threat of injury, and will continue."

Therefore, based on the record before us, we conclude that the trial court properly balanced the mitigating factors against the several aggravating factors and determined that the middle term sentence best served the interests of justice in this case. Accordingly, we determine that the court did not abuse its discretion in sentencing Pennington to the middle term of three years.

## II

## FEES

A.  Pennington's Contentions

Pennington argues the trial court violated due process and equal protection principles by imposing more than $900 in fines and fees despite the absence of substantial evidence that Pennington will be able to pay those fines.  We disagree.

B.  Background

At the beginning of the sentencing hearing, Pennington's counsel requested "that any fines, fees, and costs be stayed pending an ability to pay hearing.  Mr. Pennington is currently unemployed.  And as the court is aware, he is homeless."

No more about fines, fees, and assessments was discussed until the end of the sentencing hearing wherein the court stated:

> "In terms of deleting or staying the fines and fees, I would note the defendant, although he was homeless at the time that this incident occurred, his prison term will afford him the ability to incur prison wages, which can go towards fines and fees.  I don't have any information in front of me that he has an inability to do so.  So I think he needs to take that up administratively with the prison authorities. If he is unable to obtain wages within prison, he can return to court to seek the appropriate relief that he needs.  I'm denying the ability to pay staying at this particular point in time."

The court then imposed a restitution fine of $900 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), and a criminal conviction assessment of $30 (Gov. Code, § 70373).

9

C. Analysis

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Division Seven of the Second Appellate District held that as a matter of due process, a trial court is required to conduct an ability-to-pay hearing before imposing assessments for court facilities and court operations. (*Id.* at p. 1164.) While section 1202.4 requires courts to impose a $300 restitution fine without considering a defendant's ability to pay, the court reasoned that this fine could be imposed but stayed pending a determination on defendant's ability to pay. (*Dueñas*, at p. 1172.) This court later accepted the due process framework in *Dueñas* as to nonpunitive fees and assessments but concluded that punitive fines and fees should instead be assessed under the excessive fines clause of the Eighth Amendment. (*People v. Kopp* (2019) 38 Cal.App.5th 47, 95–98, review granted Nov. 13, 2019, S257844 (*Kopp*).) Division Four of the First Appellate District similarly applied an Eighth Amendment analysis to evaluate a range of fines and fees. (*People v. Cowan* (2020) 47 Cal.App.5th 32, 50, review granted June 17, 2020, S261952.)

Review remains pending in *Kopp* as to whether a trial court must constitutionally consider a defendant's ability to pay before imposing fines, fees, and assessments and, if it must, which party bears the burden to prove defendant's inability to pay. Our high court also has granted review in related cases, including *Cowan*, which expanded on *Kopp*'s Eighth Amendment analysis, and *Hicks*, which rejected *Dueñas*'s due process analysis outright. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946; accord *People v. Cota* (2020) 45 Cal.App.5th 786, 795.)

Here, Pennington urges us to follow *Dueñas*. We decline to do so. Rather, we will follow *Kopp* until the Supreme Court instructs us otherwise.

10

The $900 fine the court assessed under section 1202.4, subdivision (b) is punitive in nature.  (See *Kopp*, *supra*, 38 Cal.App.5th at p. 96, review granted.)  As such, the propriety of that fine should be analyzed under the Eighth Amendment to the United States Constitution and Article I, section 17 of the California Constitution.  (*Kopp*, at p. 97.)

Except for the naked assertion that Pennington "disagrees with [the People] that the $900 restitution fine was not grossly disproportionate to the gravity of the offense[,]" he offers no cogent argument or legal authority to show that the subject restitution fee violated the Eighth Amendment.  This is fatal to his cause here.

To prevail on appeal, an appellant must establish both error and prejudice from that error.  (*Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 740.)  To demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.  Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record.  (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16; Cal. Rules of Court, rule 8.204(a)(1)(C).)  Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287; *Dills v. Redwoods Associates, Ltd. (*1994) 28 Cal.App.4th 888, 890, fn. 1; Cal. Rules of Court, rule 8.204(a)(1)(B).)  We thus conclude that Pennington has forfeited his challenge to the $900 restitution fee assessed per section 1202.4, subdivision (b).

However, a different analysis applies to the court operations assessment of $40 (§ 1465.8) and the criminal conviction assessment of $30 (Gov. Code, § 70373).  As to those two assessments, Pennington was entitled

11

to an ability to pay hearing, if requested. (See *Kopp*, *supra*, 38 Cal.App.5th at p. 95, review granted.) His attorney made such a request at the beginning of the sentencing hearing. However, the court only addressed Pennington's request toward the end of the hearing when it determined that Pennington's "prison term will afford him the ability to incur prison wages, which can go towards fines and fees."

Especially in light of the small amount of assessments Pennington owes, we deem it appropriate for the trial court to consider the wages he may earn in prison. (Cf. *Kopp*, *supra*, 38 Cal.App.5th at p. 96, review granted.) The People point out that the pay rate for prison jobs varies based on the skill level required for the job. Yet, they emphasize for the lowest skill level, the minimum monthly pay is $12 per month. (See Cal. Dept. of Corrections & Rehabilitation Operations Manual, § 51120.6 (2023).)[4] In response, Pennington does not challenge the $12 per month pay but instead, claims that, even assuming he received such payment for his work, it would not pay for all his fines and fees. However, Pennington's argument assumes that the court must consider the $900 punitive restitution fee as well as the $70 of assessments in evaluating whether he has the ability to pay. Not so. As we discussed *ante*, the $900 restitution fee is subject to arguments under the Eighth Amendment of the United States Constitution and Article 1, section 17 of the California Constitution. (See *Kopp*, at p. 96.) Thus, the trial court needed only to consider whether the prison wages to be earned were sufficient to pay for the court operations assessment of $40 and the criminal conviction assessment of $30. Assuming a pay of $12 per month with a

---

[4]     We note that the People rely on the 2019 version of the California Department of Corrections and Rehabilitation Operations Manual. However, the minimum monthly payment set forth in the 2019 version (as represented by the People) is the same as the 2023 version.

12

conservative application of 20 percent of that amount toward the subject assessments, Pennington will be able to pay off the $70 during his prison sentence. And Pennington has offered no argument that he will not, at the very least, be able to obtain a job in prison requiring the lowest level of skill. Accordingly, to the extent the court did not hold a proper ability to pay hearing, Pennington was not prejudiced.[5]

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.

---

[5] Because we conclude that Pennington was not prejudiced, we do not reach his argument that the trial court erred in declaring that Pennington could challenge his fees and fines at a later time.